250

Bevy's Dry Cleaners and Shirt Laundry, Inc., Appellee, *v.* Streble et al., Appellants.

(No. 38765—Decided June 16, 1965.)

Mr. *Walter L. Greene*, for appellee.

Messrs. *Ulmer, Berne, Laronge, Glickman & Curtis*, Mr. *Marvin L. Karp*, Mr. *Richard Katcher*, Messrs. *Burke, Haber & Berick* and Mr. *Marvin L. Zelman*, for appellants.

SCHNEIDER, J. The present strife between the several parties to this appeal began with the words and conduct adopted by their respective precursors in interest. Bevy's antecedent owners and corporate officers negotiated and executed its lease and launched its business. Speedi bears the burden and enjoys the benefits of the acts of its assignor. Therefore, solutions to the questions involved depend upon the rights and duties created by the respective leases and are unaffected by the subsequent conduct of the present parties in interest, despite the fact that Bevy's lease was of record by memorandum when Speedi succeeded to its lease by assignment. That memorandum did not disclose the critical language on which Bevy's here relies and Speedi is not chargeable with constructive notice thereof. Nor does the record indicate actual notice to Speedi either of the terms of Bevy's lease or of the common ownership of both premises.

Therefore, Speedi did not promise the lessors or anyone else that its premises would be "used as a self-service laundry" *and for no other purpose, solely, only, or exclusively.* Absent is any specific word, phrase, or expression of limitation or restriction to the designated purpose. For lessors to expect the promised activity is one thing; to insist strictly upon restraint

from other activities is another, for which our language supplies words easily found and commonly used.

Words merely descriptive of the purpose for which premises are leased, when unaccompanied by express words of limitation or restriction to that purpose, will not be construed, at the instance of the lessors, as proscribing the use of the premises for purposes similar or related to the described purpose. *Borgen* v. *Wiglesworth*, 189 Kans. 261, 369 P. 2d 360; *Otting* v. *Gradsky*, 294 Ky. 779, 172 S. W. 2d 554; *Posner* v. *Air Brakes & Equipment Corp.*, 2 N. J. Sup. 187, 62 A. 2d 711; annotation, 148 A. L. R. 583; 32 American Jurisprudence 191, Section 204.

It is arguable, of course, that to hold descriptive words as not prohibitive of other uses is to render them meaningless and without effect. However, it is not unreasonable to assume that by failing to insist upon express words of proscription, lessors' purpose was merely to define the general scope of the use to which the premises may be put.

We go no further than to hold that uses similar or related to the general scope of the described use will not be prohibited as between the lessor and the lessee. We cannot speculate on a solution to the problem presented if, for example, Speedi elects to operate on its premises a foundry, slaughterhouse or some other instrumentality inconsistent with the type of construction, the character of the building or the adjacent properties.

Indeed, we are called upon merely to decide whether "a self-service laundry" permissibly includes self-service dry cleaning equipment where the purpose of the lease is not expressly limited to the phrase quoted and we may well have grounded this decision on the broad rule that all doubts will be resolved in favor of that construction which least restricts the use of the property. *Loblaw, Inc.*, v. *Warren Plaza, Inc.*, 163 Ohio St. 581; 14 American Jurisprudence 621, Covenants, Conditions and Restrictions, Section 212.

On the other hand, we might have chosen to rely upon an *ad hoc* analysis of the facts here presented. We note the broad tenor of Bevy's lease. It connotes a "service" establishment as contrasted to facilities for "self-service." But, self-service operations are not expressly forbidden. Moreover, the re-

striction clause, framed in language selected by Bevy's, interdicts lessors to "permit another *dry cleaning* or shirt *laundry*" within three miles of the premises "*except a coin-operated automatic laundry situated in the adjacent store-room.*"

As previously indicated, seven months before Speedi installed its self-service coin-operated dry cleaning machinery, Bevy's placed identical equipment in its store. This is permissible only by conceding (1) that "a general *laundry* business," as used in Bevy's general purpose clause, cannot be limited to soap and water processes but must include dry cleaning generally, or (2) that "laundry," as used in Bevy's Restriction clause, includes "dry cleaning" because the latter is used adjectively to the former. "The coupling of words together shows that they are to be understood in the same sense." *Myers v. Seaberger*, 45 Ohio St. 232, 236.

Either alternative requires a liberal construction of the same word for which Bevy's demands a strict construction in Speedi's lease to support an injunction against the latter's conduct. Equity will not be called upon to assist this duality.

Although the foregoing disposes of Bevy's rights against Speedi which might be derived through the common lessors, we are aware that where a first lessee is chargeable with notice of his lessors' general plan for the development of two or more parcels or their intention to develop those parcels for non-competing uses, he will be bound to observe precisely the limits of the purpose or use for which the lease was obtained regardless of the form of the language employed. Annotation, 97 A. L. R. 2d at page 76.

That rule is bottomed on the theory that a subsequent lessee is a third party beneficiary of the lease covenants. However, the record does not bring this case within the rule. Not only was Speedi unaware of any plan or design of lessors to develop other property before the execution of the first lease, but it had no indication of Bevy's occupancy of its storeroom, much less the fact that the eventual use might be competitive. See *Kiley v. Hall*, 96 Ohio St. 374; *Adams v. Donovan*, 97 Ohio St. 83; *Hayslett v. Shell Petroleum Corp.*, 38 Ohio App. 164.

On the contrary, Bevy's knew of the Speedi lease, but did not seek to discover its exact terms. Had it sought, it might

have seen and it might have chosen not to risk a clash with the prior rights of Speedi. Instead, it sought and received assurance against competition except for Speedi's ''coin-operated automatic laundry'' without requiring a specific definition of ''laundry'' or without ascertaining whether Speedi enjoyed equal assurance. It is only equitable that protection should beget reciprocal protection. That one ought not to be permitted to demand security who offers none, and is answerable for none, is a corollary of the maxim that one who is not bound to perform should not be entitled to exact performance.

Having concluded that Bevy's has no right to an injunction against Speedi, the rights between Bevy's and lessors remain for determination. We are of the opinion that this aspect of the case is controlled by the rule of interpretation that when language is doubtful or ambiguous, it will be strictly construed against the party seeking to enforce it, where such party was also responsible for drafting it. *Smith, Admr.,* v. *Eliza Jennings Home,* 176 Ohio St. 351; *Butche* v. *The Ohio Casualty Ins. Co.,* 174 Ohio St. 144; *Franck* v. *Railway Express Agency, Inc.,* 159 Ohio St. 343; 17A Corpus Juris Secundum, 217, Contracts, Section 324. ''He who speaks, should speak plainly, or the other party may explain to his own advantage.'' *State* v. *Worthington,* 7 Ohio, part I, 171, 173.

Speedi's similar business on the adjacent premises was specifically excepted from the covenant at lessors' instance and request. The excepting language was drafted by Bevy's before execution of the lease and adopted by the parties. Not only is the language unambiguous, making construction unnecessary, but under these circumstances, Bevy's will not be permitted to enforce the covenant against lessors, prohibiting the operation of Speedi's competing business.

In view of the foregoing, it is unnecessary to determine whether the Court of Appeals was justified in granting an injunction on an appeal on questions of law only. The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas sustained.

*Judgment reversed.*

Taft, C. J., Zimmerman, Matthias, O'Neill, Herbert and Brown, JJ., concur.