**TIMBER RIDGE INVESTMENTS LIMITED, Appellee,**

**v.**

**MARCUS et al., Appellants.**

[Cite as *Timber Ridge Invest. Ltd. v. Marcus* (1995), 107 Ohio App.3d 174.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68396.

Decided Oct. 30, 1995.

---

**176**

*Burney & Herthneck Co., L.P.A.,* and *Jon R. Burney,* for appellee.

*Sergio Di Geronimo,* for appellants.

DYKE, Judge.

Defendants-appellants, Michael A. Marcus, Douglas E. English and David Discenza, lessees d.b.a. VIP Video, appeal a partial summary judgment granted in favor of lessor, plaintiff-appellee, Timber Ridge Investments Limited, in its action for $2,242.35 in accrued common area maintenance ("CAM") charges and the dismissal of their counterclaim for breach of the lease and for tortious interference with business relations. Appellants claim that questions of fact remain with respect to whether they are liable for CAM charges and whether appellee breached the lease and tortiously interfered with business relations by constructing a building on an "outlot" within one hundred feet of their storefront and leasing it to Blockbuster video. Upon review, we find appellants' assignments of error to be without merit. The judgment of the trial court is affirmed.

On May 14, 1990 appellants entered into a five-year lease for the rental of three thousand six hundred square feet of storeroom space located at 9373 Sprague Road in the Timber Ridge Plaza for the purpose of conducting a video rental business. Pursuant to Section A, Paragraph 2(e) of the lease, appellants were obligated to make monthly payments toward CAM charges based upon a pro rata share of the estimated annual CAM fees for the Plaza. Three years later, on August 9, 1993, appellee provided appellant with the option of terminating the lease due to the construction of a Blockbuster Video store on the above-cited "outlot." On January 5, 1994, appellee billed appellants for CAM charges accrued during 1993. On January 25, 1994, appellants notified appellee of their intention to vacate the premises. On July 8, 1994, appellee filed an action in Parma Municipal Court for $2,242.35 in accrued CAM charges. Appellants answered the complaint and filed a counterclaim in excess of $2,000,000, necessitating certification to the common pleas court. On December 12, 1994, the court granted appellee's motion for partial summary judgment and its motion to dismiss appellants' counterclaim. The instant appeal followed.

## I

"The trial court erred in granting plaintiff-appellee summary judgment for the issue of money allegedly owed to plaintiff-appellee."

Summary judgment is proper pursuant to Civ.R. 56(B) if the trial court determines that:

" '(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

"Once summary proceedings have been properly initiated, the responding party must set forth specific facts demonstrating triable issues on all essential matters for which he bears the initial burden of proof. Mere reliance upon the pleadings is insufficient. Civ.R. 56(E); see, also, *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274. * * * The issue to be tried must also be 'genuine,' allowing reasonable minds to return a verdict for the nonmoving party. * * *" (Citations omitted in part.) *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 666, 591 N.E.2d 752, 754.

■ In their first assignment of error, appellants claim that questions of fact remain with respect to whether a letter, which provided them with an option to terminate the lease, also operated to release them from their obligation to pay accrued CAM charges. Appellee's letter provides as follows:

"Dear Gentleman:

"This correspondence is to confirm my verbal agreement to you that due to the construction of the nearby Blockbuster Video store I will agree to terminate our lease agreement and release all parties to all obligations under the lease agreement *effective 60 (sixty) days following written notification* of your desire to do so.

"This option to terminate is available to you and may be used at any time during the remaining life of our lease agreement. Should you have any questions please feel free to call me at your convenience.

"Sincerely,

"TIMBER RIDGE INVESTMENTS, INC." (Emphasis added.)

The proffered writing clearly states that the release of obligations would become "effective" *after* notification of termination of the lease. Hence, the option to terminate would operate in a prospective manner releasing appellants from obligations arising with respect to the remaining two years of the lease. There is no language in the lease or the above-cited writing to support appellants' claim that exercise of the option would operate retroactively with respect to accrued debts or obligations. Appellants' accord and satisfaction argument is also devoid of merit as they have failed to present evidence that there was a meeting of the minds with respect to appellee's intent to extinguish any past liabilities. See *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes* (1983), 7 Ohio St.3d 7, 7 OBR 318, 455 N.E.2d 489. Hence, no questions of fact remain with respect to appellants' liability for $2,242.35 in accrued CAM charges. Their first assignment of error is overruled.

## II

"The trial court erred in granting plaintiff-appellee summary judgment where genuine issues of material fact exist relative to plaintiff-appellee's obstruction of defendants-appellants' storefront, and whether the obstruction constitutes business interference."

In their second assignment of error appellants claim that questions of fact remain with respect to the following issues: whether appellee represented that they would have an exclusive right to rent videos; whether appellee's conduct in constructing and leasing premises to Blockbuster constituted a material breach of such promise; whether appellee's erection of a building on the "outlot" which allegedly blocked signage and access to appellants' store amounted to constructive eviction; and whether appellee's construction of the building and lease with Blockbuster amounted to tortious interference with business relations. Upon review we find appellants' assertions to be unpersuasive.

Ohio courts have recognized the inherent contractual nature of lease agreements. See *Bevy's Dry Cleaners & Shirt Laundry, Inc. v. Streble* (1965), 2 Ohio St.2d 250, 31 O.O.2d 507, 208 N.E.2d 528; *Downtown Assoc., Ltd. v. Burrows Bros. Co.* (1986), 34 Ohio App.3d 296, 518 N.E.2d 564; *Fireman's Fund Ins. Co. v. BPS Co.* (1985), 23 Ohio App.3d 56, 23 OBR 101, 491 N.E.2d 365. In construing and interpreting lease provisions, courts have applied traditional contract principles. See *Myers v. E. Ohio Gas Co.* (1977), 51 Ohio St.2d 121, 5 O.O.3d 103, 364 N.E.2d 1369, and *Downtown Assoc., supra.* Where terms of a contract are clear and unambiguous, a court cannot find a different intent from that expressed in the contract. See *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 10, 24 OBR 5, 8–9, 492 N.E.2d 441, 445. The intent of the parties is presumed to reside in the language they chose to employ in it. *Kelly v.*

*Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. The court should not look to evidence outside the agreement unless the contract is unclear and ambiguous. See *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371. If the meaning is apparent, the terms of the agreement are to be applied, not interpreted. See *Carroll Weir Funeral Home v. Miller* (1965), 2 Ohio St.2d 189, 192, 31 O.O.2d 402, 404, 207 N.E.2d 747, 749.

The first page of the instant lease provides as follows:

## "BUSINESS PROPERTY LEASE

"Timber Ridge Investments, an Ohio General Partnership (hereinafter referred to as the 'Lessor') does, subject to the terms, conditions and agreements set forth below, hereby lease to Michael A. Marcus, Douglas E. English and David Discenza * * * the following described property (hereinafter referred to as the 'Premises'):

"A storeroom containing 3,600 square feet in a one-story building located at 9371-5 Sprague Road, N. Royalton, Ohio 44136, which is marked in red on the site plan attached hereto as Exhibit A, denoted as Timber Ridge Plaza. The 'Premises' are a part of the property described on *Exhibit B* attached hereto."

Our review of Exhibit B demonstrates that it provides a legal description of Timber Ridge Plaza exclusive of a parcel of property referred to as the "outlot."[1] While appellants claim that appellee knew that the outlot would be the site for an "obstructive" building and that appellee "deceived" them into signing the lease, appellants have failed to support their pleadings with evidence that appellee entered into negotiations with Blockbuster prior to the signing of the instant lease or that appellee made any representations whatsoever regarding the parcel of land referred to as the outlot. Appellants have also failed to attach a specimen or any other evidence to support their claim which questions the authenticity of the filed lease. See *Celotex, supra.* Last, appellants claim that the court's dismissal was erroneous because their lease affirmatively prohibits the restricted access and reduced visibility allegedly caused by the Blockbuster video building. However, Paragraph 20 of the lease, entitled "Changes to Shopping Center," provides in relevant part that:

"Notwithstanding anything set forth in this lease to the contrary, it is agreed that Lessor reserves the right, without invalidating this lease or modifying any

---

1. Exhibit B is titled as follows:

"EXHIBIT B<br>
"TIMBER RIDGE PLAZA<br>
"LEGAL DESCRIPTION Without OUTLOT"

provision thereof at any time either before, during or after the initial construction thereof, one or more times, to:

" * * *

"h. add additional buildings to the premises.

"Notwithstanding the foregoing, Lessor shall not restrict access to Tenant's Premises or visibility of Tenant's sign."

Accordingly, the express terms of the lease clearly and unambiguously demonstrate that the above-cited prohibition applies to improvements or construction which take place on the "Premises" as described by Exhibit B. Since the outlot is legally excluded from the "Premises," appellants have no rights arising with respect to this property and their tort claim must fail, for it is well settled that:

"The tort of business interference occurs when a person without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another." *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235, paragraph two of the syllabus.[2]

Since the outlot is excluded from appellants' lease, appellee was privileged to construct a building on that parcel. Since there are no terms in the lease to provide for exclusivity with respect to video rental, appellee was further privileged to lease the building to a competitor.[3] Hence, no questions of fact remain with respect to whether appellee breached the lease or whether it tortiously interfered with appellants' business relations. The trial court did not err in granting appellee's motion to dismiss appellants' counterclaim.

Appellants' second assignment of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

---

**2.** Appellants' argument also fails as the *Juhasz* syllabus refers to person causing a *"third party not to enter into, or continue, a business relationship."* Appellants' posture in this case is not that of a third party. Accordingly, an additional ground exists for the dismissal of this case.

**3.** Appellants do not dispute the fact that the instant lease provides no terms which would provide them with an "exclusive" right to rent videos. Instead they cite a letter, written by the appellee six-months prior to the execution of the lease, as evidence of a promise of exclusivity with respect to Blockbuster. Such letter states in relevant part that: *"as far as* the *smaller retail stores are concerned,* we *could* give you an exclusive on video rentals." (Emphasis added.) (Exhibit 1, Appellants' motion and brief.) This statement fails to generate a question of fact on the issue of exclusivity with respect to Blockbuster video because the representation expressly refers to stores already constructed on the "Premises" and not to any stores constructed on the "Outlot." Additionally, the word "could" is both equivocal and conditional and falls far short of an affirmative promise of exclusivity even as it applies to retailers operating on appellants' leased "Premises."

PATTON, C.J., concurs.

KARPINSKI, J., concurs in part and dissents in part.

KARPINSKI, Judge, concurring in part and dissenting in part.

I concur in the majority's disposition of the second assignment of error, but respectfully dissent from the first assignment of error for the following reason. The letter the landlord sent providing an option to terminate the lease clearly states that the tenants would be released from "all obligations under the lease." The letter does not distinguish between future or past obligations. If such a distinction were intended, the writer would have to so specify. Without such an express distinction, the usual meaning of "all" must prevail.

The majority opinion has emphasized a section of the letter that was not underlined in the original. The phrase emphasized, "effective 60 (sixty) days following written notification of your desire to do so," is grammatically ambiguous in the sentence. As an adjectival phrase, it should modify what it is immediately next to, that is, "lease agreement." Obviously, such a modification would make no sense. Indeed, there is no noun in the entire sentence this adjectival phrase could properly modify. Such imprecision of language should not be the basis for interpreting the plain meaning of the word "all" to mean "only future." Moreover, because the dangling adjectival phrase, at the least, is ambiguous, the meaning of this letter was a question of fact that should have been presented to a jury. For that reason, I would reverse and remand the trial court's disposition of the claim in the first assignment of error.