OPINION
Third party defendant-appellant, Harry T. Wilks, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, city of Hamilton, Ohio ("city").
On February 20, 1946, an Indenture of Lease was executed between Violet S. Wirtz ("Wirtz") and Ann S. VanderHoof ("VanderHoof"), as lessors, and The John Shillito Company ("Shillito"), as lessee ("Wirtz-Shillito" lease).[1] The property which is the subject of the Wirtz-Shillito lease consists of a ninety by one hundred foot parcel located on High Street in Hamilton, Ohio. The pertinent provision contained in the lease states as follows:
 3. The Lessors hereby grant to the Lessee the right to alter, repair or remodel or reconstruct any building or buildings now or hereafter upon the leased premises, provided that no such alteration, repair, remodeling or reconstruction shall impair the value of the building or buildings on said premises, and the Lessee may demolish any of the improvements now or hereafter made on said premises, provided that said Lessee at its own cost replace them with improvements of at least equal value, and such improvements may extend upon or be a part of those on the adjoining premises.
The lease is silent as to when any demolished improvements must be replaced.
Robert J. Briede ("Briede") is the trustee of the testamentary trusts of Wirtz and VanderHoof and owns the fee simple interest in the real estate which is the subject of the Wirtz-Shillito lease. Briede, as lessor, subsequently leased the property to Harry T. Wilks ("Wilks") pursuant to the terms of the Wirtz-Shillito lease.[2] Sometime during his tenancy, but prior to January 1995, Wilks demolished several buildings located on the leased property.
On January 23, 1995, Wilks and the city executed an Assignment and Assumption of Lease ("Wilks-city" assignment) pursuant to which Wilks assigned his interest in the lease with Briede to the city. The pertinent provisions of the Wilks-city assignment are as follows:
 2. Assumption. Assignee [city] hereby assumes from Assignor [Wilks] its interest in and to the Lease and agrees to perform all of the obligations, liabilities and responsibilities of Assignor and the lessee under the Lease arising from and after the date of this Assignment and Assumption of Lease.
 3. Indemnification. Assignee [city] agrees to pay and to indemnify, defend and hold harmless Assignor [Wilks] from any loss, cost, damages, expense, liability, judgment or order from or any way relating to the Lease or the Property arising from and after the date of this Assignment and Assumption of Lease.
When the Wilks-city assignment was executed, the buildings which had been demolished by Wilks had not been replaced.
On November 13, 1995, the city filed a petition for appropriation of the property which is the subject of the Wilks-city assignment.[3] On November 29, 1995, Briede filed a third party complaint against Wilks seeking damages for the value of the improvements destroyed by him prior to his assignment of the lease to the city.[4] Briede also filed a counterclaim against the city alleging that by virtue of the assignment from Wilks, the city became obligated under the terms of the original Wirtz-Shillito lease to rebuild the buildings which Wilks had demolished. The city filed a third party complaint against Wilks claiming that by virtue of the indemnification provision contained in the Wilks-city assignment, the city is entitled to indemnification from Wilks on Briede's claims. Wilks also filed a counterclaim against the city arguing that by virtue of the indemnification provision of the Wilks-city assignment, the city is required to indemnify him for any judgment that may be awarded against him in favor of Briede.
On June 27, 1996, the city filed a motion for summary judgment on Wilks' counterclaim.[5] On July 22, 1996, Wilks filed a motion for summary judgment against the city and Briede. On October 7, 1996, the trial court filed a judgment entry granting the city's motion for summary judgment on Wilks' counterclaim and denying Wilks' motion for summary judgment against the city and Briede. The court found that the "city has no duty to indemnify Wilks for the replacement of the demolished buildings as the breach occurred prior to the city's assumption of any responsibility under the lease." The court overruled Wilks' motion for summary judgment, finding that genuine issues of material fact remain to be tried. It is from this judgment that Wilks now appeals, setting forth the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST IN THIS CASE AND THE CITY OF HAMILTON WAS NOT ENTITLED TO A JUDGMENT AS A MATTER OF LAW.
In his sole assignment of error, Wilks contends that the trial court erred by granting summary judgment in favor of the city because genuine issues of material fact remain to be resolved.
Summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds construing the evidence in favor of the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144, 146, quoting Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. 66; Civ.R. 56(C). When reviewing an entry of summary judgment, an appellate court applies the same standard used by the trial court and must examine all evidence properly presented to determine whether there is a genuine issue as to any material fact and whether reasonable minds can reach only one conclusion which is adverse to the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360; Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
Since a lease is a contract, courts will apply traditional contract principles when interpreting and construing lease provisions. Timber Ridge Investments Ltd. v. Marcus (1995),107 Ohio App.3d 174, 178. When construing the terms of a lease, courts are required to "give effect to the unambiguously expressed intent of the parties." Myers v. East Ohio Gas Co. (1977), 51 Ohio St.2d 121, 125. See, also, E.S. Preston Assoc., Inc. v. Preston (1986), 24 Ohio St.3d 7, 10. If the intent of the parties cannot be ascertained from the language contained in a contract, an interpretation of the parties' intentions becomes an issue of fact to be determined. Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64, 66. When interpreting the provisions of a contract in order to determine the intentions of the parties, extrinsic evidence should only be considered when the language employed in the agreement is unclear and ambiguous. Shifrin v. Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635, syllabus; see, also, Fireman's Fund Ins. Co. v. Mitchell-Peterson, Inc. (1989), 63 Ohio App.3d 319, 328.
After carefully reviewing the record, we find that the language employed in the Wilks-city assignment regarding the provisions dealing with assumption and indemnification are unclear and ambiguous. We find that genuine issues of material fact remain as to what duties, responsibilities, and obligations the parties intended the city to assume from Wilks as a result of the Wilks-city assignment. The city contends that it is responsible for indemnification of Wilks only for claims that arose after the assignment on January 23, 1995. However, the city acknowledges that pursuant to the Wilks-city assignment, it is responsible for replacing the improvements demolished by Wilks prior to the assignment.[6] In addition, although Wilks demolished the buildings on the property prior to the assignment, and the city was aware of this fact, the question remains whether Briede's claims, if any, against Wilks arose before or after the assignment since the lease terms do not specify when any demolished improvements must be replaced.[7] Accordingly, we find that genuine issues of material fact remain to be resolved and preclude summary judgment in favor of the city. See Murphy,65 Ohio St.3d at 360. Wilks' sole assignment of error is sustained. On remand, the trial court is instructed to conduct appropriate proceedings in order to determine the intentions of the city and Wilks with respect to the parties' respective duties, responsibilities, and obligations arising by virtue of the Wilks-city assignment executed on January 23, 1995.
Judgment reversed and remanded for further proceedings consistent with this opinion.
YOUNG, P.J., and KOEHLER, J., concur.
[1] The lease had an effective date of November 5, 1945, and was for a term of ninety-nine years.
[2] Apparently, Briede succeeded to the interests of Wirtz and VanderHoof, as lessors, and Wilks succeeded to the interest of Shillito, as lessee, for the duration of the original ninety-nine year lease term.
[3] The petition for appropriation indicates that the city intends to appropriate the property for the "public purposes of urban renewal, redevelopment and economic redevelopment within the Hamilton downtown area."
[4] Briede claimed that the destroyed improvements were worth more than $200,000.
[5] The city had previously filed an identical motion on March 13, 1996, which was overruled by the trial court on April 24, 1996.
[6] The city contends that it "cannot and will not dispute that as a result of the terms of the Assignment and Assumption of Lease, it or its successor in interest would, at some indefinite future date before the termination of the lease, be obligated to construct improvements to replace the structures Wilks demolished. Such an obligation follows from the operative language of the lease as well as paragraphs 2 and 3 of the Assignment, which provide Hamilton will assume Wilks' obligations and indemnify Wilks against claims `arising from and after the date of this Assignment and Assumption of Lease.'" Furthermore, the record indicates that the city intends to build a new government services center on the property.
[7] The question as to what, if any, damages are owed Briede by either the city or Wilks is not before us, as the trial court found that genuine issues of material fact pertaining to damages exist for trial.