**RUSSELL REALTY COMPANY, Appellee,**

v.

**FEGHALI et al., Appellants.**

[Cite as *Russell Realty Co. v. Feghali* (1997), 121 Ohio App.3d 291.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71181.

Decided June 27, 1997.

*Costanzo & Lazzaro* and *S. Robert E. Lazzaro,* for appellee.

*Kevin J.M. Senich,* for appellants.

SPELLACY, Judge.

Defendants-appellants, Joseph Feghali and Maroun, Inc., appeal the judgment of the trial court on their counterclaim for breach of contract in favor of plaintiff-appellee, Russell Realty Company. Appellants assign the following errors for our review:

"I. The trial court erred in concluding notice of the exercise of Clause 5–C terminated the lease.

"II. The trial court erred in concluding that a lessee's acts subsequent to the exercise of an option to terminate, but prior to the operative date of that option, did not waive lessee's right to terminate under Clause 5–C.

"III. The trial court erred in concluding that lessee did not breach the lease by abandoning the premises on October 31, 1994.

"IV. The trial court's finding that Maroun instructed Russell to leave the premises pursuant to the exercise of the option under Paragraph 5–C is against the manifest weight of the evidence."

Finding appellants' appeal to lack merit, the judgment of the trial court is affirmed.

I

On March 14, 1995, appellee filed a small claims complaint in the Rocky River Municipal Court. Appellee sought to recover its security deposit from appellants in the amount of $1,833. On April 10, 1995, appellants filed their answer and counterclaim alleging breach of contract against appellee.

On July 21, 1995, because appellants' counterclaim exceeded its monetary jurisdictional limit, the Rocky River Municipal Court transferred the case to the

Cuyahoga County Court of Common Pleas. Appellee's complaint was filed in the court of common pleas on August 4, 1995.

On July 29, 1996, a bench trial was conducted, and on July 30, 1996, the trial court found in favor of appellants on appellee's complaint for the return of its security deposit and in favor of appellee on appellants' counterclaim for breach of contract.

## II

In November 1987, appellee and its successor corporation entered into a three-year lease agreement with Alex Kanareff for the rental of two thousand square feet of office space located at 27010 Center Ridge Road, Westlake, Ohio. Pursuant to Section 4 of the lease, appellee was obligated to make monthly rental payments in the amount of $1,833. The lease agreement also contained the following option clause:

"Notwithstanding any other provisions in this contract:

"5(c) If Lessee's real estate brokerage business at this location is not profitable, lessee may terminate the lease three months after providing lessor with notice to that effect. Lessee shall leave the partitions, floor covering, wall covering and fixtures for the benefit of lessor."

In November 1989, appellant Feghali, president of appellant Maroun, Inc., purchased Dover Village Center from Alex Kanareff. As part of the purchase agreement, appellants assumed appellee's lease. On March 13, 1992, appellee entered into a Lease–Extension–Agreement with appellants, thereby extending the period of the lease for five years and increasing appellee's monthly rent. The remainder of the original lease agreement stayed the same.

On March 16, 1993, appellee informed appellants, pursuant to Section 5(c) of the lease agreement, that it had not been profitable for at least three months and wished to invoke its option to terminate the lease effective June 30, 1993. Appellee, however, did not vacate the premises on June 30, 1993.

On February 14, 1994, appellee again informed appellants that its business had not been profitable and that it wished to terminate the lease effective May 31, 1994. On June 16, 1994, appellants informed appellee that it either must exercise its option based on its February 14, 1994 correspondence indicating that appellee wished to terminate the lease May 31, 1994, or appellants would consider Section 5(c) of the lease agreement stricken.

On July 26, 1994, appellee's attorney informed appellants that appellee intended to exercise its right to terminate the lease and would vacate the property no later than October 1, 1994. Appellee continued to pay rent to appellants through

October 1994, and vacated the premises on October 22, 1994. On December 12, 1994, appellee informed appellants of their obligation to return the deposit by December 22, 1994, in the amount of $1,833. The premises vacated by appellee remained vacant until February 1996.

## III

For purposes of this appeal, appellants' first, second and third assignments of error will be addressed together. Appellants contend that the trial court erred in concluding that an option, once exercised by tendering proper notice, is effective as of the date of notice regardless of the subsequent conduct of the parties. Thus, appellants argue that the trial court erred in finding appellee did not breach the lease agreement when it vacated the premises on October 31, 1994.

Ohio courts have recognized the inherent contractual nature of lease agreements. *Timber Ridge Invests. Ltd. v. Marcus* (1995), 107 Ohio App.3d 174, 667 N.E.2d 1283. In construing and interpreting lease provisions, courts have applied traditional contract principles. *Id.* at 178, 667 N.E.2d at 1285; see *Myers v. E. Ohio Gas Co.* (1977), 51 Ohio St.2d 121, 5 O.O.3d 103, 364 N.E.2d 1369. Where terms of a contract are clear and unambiguous, a court cannot find a different intent from that expressed in the contract. *Id.* The intent of the parties is presumed to reside in the language they chose to employ in it. *Id.*, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. The court should not look to evidence outside the agreement unless the contract is unclear and ambiguous. *Marcus,* 107 Ohio App.3d at 179, 667 N.E.2d at 1285–1286. If the meaning is apparent, the terms of the agreement are to be applied, not interpreted. *Id.*

Section 5(c) of the instant lease provides as follows:

"Notwithstanding any other provisions in this contract:

"5(c) If Lessee's real estate brokerage business at this location is not profitable, lessee may terminate the lease three months after providing lessor with notice to that effect. Lessee shall leave the partitions, floor covering, wall covering and fixtures for the benefit of lessor."

In the present case, appellee, on March 16, 1993, notified appellants that its business had not been profitable and therefore it would be invoking its option to terminate the lease within ninety days. Appellee, however, failed to vacate the premises by June 30, 1993, but continued to pay rent. On February 14, 1994, appellee, for a second time, notified appellants that its business had not been profitable and that it was invoking its option to terminate the lease effective May 31, 1994. On June 16, 1994, appellants notified appellee that it must either exercise its right to terminate the lease based on its letter dated February 14,

1994, or the option to terminate would be stricken from the lease. Again, appellee did not vacate the premises and continued making its monthly rent payment.

On July 26, 1994, appellee, for a third time, notified appellants of its intent to exercise its option to terminate the lease, and on October 22, 1994, appellee vacated the premises.

The terms of Section 5(c) of the lease agreement are clear and unambiguous, stating that appellee, *may*, after determining that its business has been unprofitable, exercise its option to terminate the lease agreement within ninety days. It is clear from the use of the term "may," rather than the term "shall," that the parties intended that appellee would have the *choice* to exercise its option to terminate the lease.

Appellants, however, argue that the term "may" as set forth in Section 5(c) of the lease agreement precluded appellee from exercising its option to terminate the lease more than one time. Furthermore, appellants contend that the trial court erred in not concluding that appellee's status after the expiration of the three-month period and after appellee's decision to remain in possession of the premises was that of a holdover tenant. Appellants state that although the original lease agreement remained in effect, once appellee initially exercised its option to terminate the lease, the option could no longer be exercised again. Therefore, appellee was in breach of the agreement when it vacated the premises on October 22, 1994, nearly three years before the term of the lease was to end.

As stated previously, the terms of the instant lease agreement are clear and unambiguous. If its business became unprofitable, appellee had the right to notify appellants that it was exercising its option to terminate the lease agreement. Furthermore, the plain language of the lease agreement does not indicate that appellee's option to terminate the agreement was limited and could not be renewed once it had been exercised. Moreover, the record reveals that the actions of the parties, themselves, did not indicate that appellee could only exercise the option to terminate the lease agreement one time.

Pursuant to the Section 5(c) of the lease agreement, appellee exercised its option to terminate a second time in its letter dated February 11, 1994, and appellants accepted appellee's second notice. It was not until appellee failed to vacate the premises on May 31, 1994 that appellants notified appellee that it must vacate the premises per its February 14, 1994 letter or the option to terminate the lease agreement would be stricken from the lease.

Clearly, the parties to the original agreement did not intend to limit the number of instances in which appellee could invoke its option to terminate. In particular, appellants did not treat appellee as a holdover tenant as provided for

in the lease agreement when, on two separate occasions, appellee failed to vacate the premises after giving notice that it was exercising its option to terminate the lease. Nor did appellants assert that appellee had breached the lease agreement by failing to leave within ninety days after providing notice of termination on two separate occasions. Thus, the original lease agreement between the parties, including the option to terminate, remained in full effect until appellee vacated the premises on October 22, 1994, ninety days after appellee gave appellants notice pursuant to Section 5(c).

Appellee did not breach the lease agreement when it complied with the agreement's clear and unambiguous terms by giving appellants notice on July 26, 1994 of its intent to invoke its option to terminate and vacate the premises by October 1994. Accordingly, appellants' first, second and third assignments of error are without merit.

## IV

In their fourth assignment of error, appellants contend that the trial court's finding that appellant Maroun, Inc. instructed appellee to leave the premises pursuant to the exercise of the option under Section 5(c) was against the manifest weight of the evidence.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus. A court of appeals must be guided by a presumption that the findings of the trier of fact were correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276.

Based upon our review of the entire record, we find that there was sufficient, competent, credible evidence for the trial court to find that appellants instructed appellee to leave pursuant to the exercise of the option under Section 5(c). Thus, the record contains no basis for this court to disturb the determination of the trial court. Accordingly, appellants' fourth assignment of error is overruled.

*Judgment affirmed.*

PATRICIA ANN BLACKMON, P.J., and DAVID T. MATIA, J., concur.