Defendants-appellants, Chong Hui Sin, et al., appeal from an order of the Mahoning County Court No. 4. Plaintiff-appellee, Grace Kim, cross appeals from the same order.[1] The case arises from a dispute over a commercial lease agreement entered into by the parties.
Appellee is the managing agent of the premises which are the subject matter of the lease agreement. The premises are owned by Clinton and Maria Kim. In July of 1996, appellee entered into a lease agreement for the subject premises with appellant Chong Hui Sin. On July 22, 1996, appellant Chong Hui Sin assigned the leased to appellant Glenn Van Kamp.[2]
Appellant took possession of the premises in July of 1996. Appellant also began making improvements to the premises with the intention of later operating a massage parlor on the premises. Appellant made an application to Austintown Township for a massage parlor license and received the license on October 3, 1996, at which time appellant opened up the premises for business.
On October 4, 1996, counsel for appellant sent a letter accompanied with a check for $3,200 to appellee. The letter indicated that the $3,200 check represented the first month's rent ($1,600) and security deposit ($1,600). The letter further stated that the lease commenced on October 3rd, the same day appellant received the massage parlor license.
On October 21, 1996, counsel for appellee returned the $3,200 check accompanied with a letter to counsel for appellant. The letter asserted that rent was due not just for October 1996, but also for July, August, and September 1996. Appellee's interpretation of the lease was that it commenced on July 1, 1996 with rent accruing and becoming due upon appellant's acquisition of the massage parlor license. The letter also sought payment for utility bills which had accrued from July through September 1996. Adding together the back rent, security deposit, and utility bills, appellee demanded a total payment of $8,505.68.
On October 24, 1996, counsel for appellant responded with two letters. The first letter asserted that appellant was responsible for only part of the utilities. The second letter indicated that, under appellant's interpretation, the lease was not to begin until appellant received the license. Appellant maintained that since she did not receive the license until October 1996 no rent was due for July, August, and September 1996. Additionally, the letter stated that the first month's rent of $1,600 was to be deducted from repair costs which totaled over $31,000.
On November 1, 1996, counsel for appellant sent two checks, one for $3,200 and one for $1,600, to counsel for appellee. A letter accompanying the checks indicated that amount represented rent for November and December 1996. Presumably, the remaining $1,600 represented a security deposit.
On November 14, 1996, counsel for appellee sent a letter to counsel for appellant indicating that the two checks totaling $4,800 would be applied to the security deposit and the July and August 1996 rent. The letter further stated a demand for payment of rent for the months of September, October, and November 1996 (totaling $4,800). The letter threatened eviction if payment was not received within seven days.
On December 6, 1996, counsel for appellant sent a letter to counsel for appellee acknowledging receipt of notice of eviction. Appellant again asserted that she had expended over $30,000 in making improvements to the premises.
On December 16, 1996, appellee filed a complaint in Mahoning County Court No. 4. The complaint was titled "COMPLAINT IN FORCIBLE ENTRY AND DETAINER — COMMERCIAL PROPERTY" and named appellant as one of the party defendants. The complaint alleged that appellant was in arrears in rent and asked for a restitution of the premises only.
Appellee filed an amended complaint on February 14, 1997, alleging that additional back rent had accrued since the filing of the original complaint and set forth a second cause of action for money.
With the parties and counsel present, a hearing was held on the matter on March 24, 1997. The trial court judge took the matter under advisement and later filed a judgment entry on July 10, 1997. The judgment entry stated in pertinent part:
 "IT IS ORDERED that monthly rent of $1,600.00 is due and owing to the Plaintiff commencing with the month of October, 1996. All payments held in escrow by [attorney for defendant-appellant] are to be released to the Plaintiff within seven (7) days of the date of this Entry. Monthly rentals of $1,800.00 per month will commence July 1, 1997 and continue in accordance with the terms of lease.
 "IT IS FURTHER ORDERED that there was no agreement reached by the parties as to agreed upon repairs and therefore the Defendant is not entitled to any credit against future rentals for repairs made.
 "IT IS FURTHER ORDERED that the Defendant is responsible for all utility bills of the rented premises commencing with July 1, 1996.
 "IT IS FURTHER ORDERED that if Defendant fails to release the escrowed payments within seven (7) days of the date of this Entry, then Plaintiff shall be entitled to a writ of execution for the premises."
On July 21, 1997, appellant filed with the trial court a motion for stay of judgment. On July 22, 1997 appellant filed a notice of appeal. On July 23, 1997, appellant filed an amended notice of appeal from the judgment entered on July 10, 1997.
On July 31, 1997, a hearing was held on appellant's motion for stay of judgment. Counsel for appellant argued that appellant could not be evicted and for a stay of execution of the court's July 10, 1997 order. Counsel for appellee opposed the motion arguing that appellee had received no rent subsequent to the filing of the complaint and would not receive any additional rent while the appeal before this court was pending. That same day a judgment entry was filed granting a stay of execution of the court's July 10, 1997 order. As a condition of granting appellant's motion the court ordered appellant to deposit with the court $11,200.00 plus $621.87. Additionally, the court ordered appellant to pay appellee directly $1,178.47 for the rent for September and to further pay appellee $1,800 per month for rent thereafter. The entry also stated that, as a matter of clarification, the July 10, 1997 order was intended to state that appellant owed no rent for July, August, and September 1996 and that appellant's rental obligation did not commence until October 1996.
In her first assignment of error, appellant alleges that:
 "THE COURT ERRED IN ITS JUDGMENT ENTRY OF JULY 10, 1997, WHEN IT FOUND THAT, 'IT IS FURTHER ORDERED THAT THERE WAS NO AGREEMENT REACHED BY THE PARTIES AS TO AGREED UPON REPAIRS AND THEREFORE THE DEFENDANT IS NOT ENTITLED TO ANY CREDIT AGAINST FUTURE RENTALS FOR REPAIRS MADE."
Appellant argues that counsel for appellee conceded at the outset of the March 24, 1997, hearing that there was no dispute relating to the repairs and, therefore, the "repairs made" were "agreed upon." Appellant quotes from the transcript:
 "THE COURT: So you've got a dispute as to whether or not the lease is effective?
 "MR. JOHNSON: No. We agree that it's effective." (Tr. 2.)
"* * *
 "THE COURT: Any disputes as to the value of the repairs?
 "MR. JOHNSON: Well, I mean, first we hear — our only dispute is this —
 "THE COURT: I understand the legal dispute as to whether or not — what I want to do is get testimony as to the value of the repairs.
 "MR. JOHNSON: The only thing I disagree with, a couple of the repairs seem to be personal things; okay? In other words, there's — one of the items on here is a $2,000 table. Well, they're going to obviously take those when they leave, so why would she be willing to have that deducted from rent? There's only a couple things on here. Basically they seem to be things that probably did occur. We don't have any big dispute with them.
"THE COURT: Okay.
 "MR. STANOS: I know the Court does not know this, but they have massage tables in massage parlors.
"THE COURT: No big surprise.
 "MR. STANOS: And these were replaced. So actually, she's entitled to replacement.
 "THE COURT: Okay. We'll get into that. I just wanted to — is there a need to view this video before we go.
 "MR. JOHNSON: I'll stipulate that it's been greatly improved." (Tr. 13-14)
Appellee responds to appellant's first assignment of error arguing that, as a tenant, appellant was responsible for all maintenance, repairs, and improvements. As support for her argument, appellee cites to the following pertinent provisions of the lease agreement:
 "3. Lessee does hereby covenant and agree with the said Lessors as follows.
"* * *
 "h. That the Lessee will make no alterations or additions on or to said premises without the written consent of said Lessors, and hereby agrees to take said premises in its present condition;
"* * *
 "l. That the Lessee will be responsible for all maintenance and repairs to the interior of the building, Lessors herein agree to be responsible for structural repairs on the exterior and the roof. Lessee agrees to take responsibility for snow removal and any and all fees associated with a dumpster on said premises."
"* * *
 "6. In the event Lessee's Permit is not received, Lessors are not liable for any expenses incurred by the Lessee except as follows:
 "Lessors are liable for any major material improvements and/or repairs required to be made for the procurement of said permit, however the Lessors must approve the major repairs requested by the Lessee which are required by the Health, Zoning etc., Agents of The Austintown Township.
 "7. Said Lessee is to pay for the agreed repairs and deduct amounts paid from future rents."
Implicit in the trial court's July 10, 1997 judgment entry is that repair expenses could be credited against rent. However, the trial court explicitly concluded that there was no agreement reached by the parties as to agreed upon repairs. This was a factual determination and, as such, should not be disturbed unless it was against the manifest weight of the evidence. In other words, when approaching this type of assigned error this court is necessarily constrained by the principle that judgments supported by some competent, credible evidence must not be reversed, as being against the manifest weight of the evidence. Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226; C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. Additionally, the reviewing court must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Gerijo, supra; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. The trial court's conclusion is supported by a lack of evidence in the record to the contrary. References to the record made by appellant prove only that appellee agreed that significant repairs and improvements had been made to the premises. Missing from the statements made by counsel for appellee was that appellee agreed to said repairs or agreed that all of said repairs could be credited against rent.
Accordingly, appellant's first assignment of error is without merit.
In her second assignment of error, appellant alleges that:
 "THE PLAINTIFF-APPELLEE IS GUILTY OF LACHES AND/OR ESTOPPEL WHEN DURING THE TIME OF THE REPAIRS MADE BY DEFENDANTS-APPELLANTS SHE DID NOT DEMAND THAT THE REPAIRS BE STOPPED SINCE SHE DID NOT 'IN WRITING CONSENT TO THE REPAIRS' AS STATED IN THE AGREEMENT."
Appellant argues that appellee visited the subject premises while repairs were being made and did not object thereby waiving any written consent requirement.
Appellee argues that appellant's laches/estoppel argument should fail because they are affirmative defenses which appellant never pled. See Civ.R. 8(C). Additionally, appellee asserts that, for all she knew, appellant had no intention of later trying to apply the repair costs against the rent. Appellee further relies on items 3(h) and 3(l) of the lease agreement which indicated that appellant was taking the premises "as is" and was responsible for maintenance and repair costs.
Civ.R. 8(C) is on point. It provides in pertinent part:
 "In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel, * * * laches, * * * and any other matter constituting an avoidance or affirmative defense. * * *"
"An affirmative defense is waived under Civ.R. 12 (H), unless it is presented * * * affirmatively in a responsive pleading under Civ.R. 8(C) * * *." State ex rel. The Plain DealerPublishing Co. v. Cleveland (1996), 75 Ohio St.3d 31, 33. Appellant failed to raise an estoppel or laches defense in her answer to appellee's complaint. Consequently, appellee effectively waived those defenses and cannot now assert them on appeal.
Accordingly, appellant's second assignment of error is without merit.
In her third assignment of error, appellant alleges that:
 "THE PLAINTIFF-APPELLEE AGREED IN THE LEASE TO PERMIT THE DEDUCTION OF THE EXPENSES FOR THE REPAIRS."
In support of her argument, appellant highlights the following provisions of the lease agreement:
 "6. In the event Lessee's Permit is not received, Lessors are not liable for any expenses incurred by the Lessee except as follows:
 "Lessors are liable for any major material improvements and/or repairs required to be made for the procurement of said permit, however the Lessors must approve the major repairs requested by the Lessee which are required by the Health, Zoning etc., Agents of The Austintown Township.
 "7. Said Lessee is to pay for the agreed repairs and deduct amounts paid from future rents."
Appellant also quotes from the Escrow Agreement, attached to the lease, as follows:
 "* * * and [attorney for defendant-appellant] is directed to release the said funds to its Landlord and is Ordered to deduct the amount of expenses made by Lessee which was agreed by the parties."
Appellant's argument ignores the plain language of the lease provisions which state that only those repairs which were agreed upon could be applied against the rent. Additionally, appellee's agreement (i.e., agreement to the repairs) must have been embodied in the form of written consent by appellee, which was never obtained.
As was discussed under appellant's first assignment of error, whether or not the repairs made by appellant were agreed upon by the parties was a factual determination for the trial court. The trial court decided this issue adversely to appellant and appellant has failed to demonstrate that the court's decision was against the manifest weight of the evidence.
Accordingly, appellant's third assignment of error is without merit.
In her first cross assignment of error, appellee alleges that:
 "THE TRIAL COURT ERRED IN RULING THAT NO RENT WAS DUE PLAINTIFF-APPELLEE FOR THE MONTHS OF JUNE, JULY, AND AUGUST OF 1996."
In support of her argument appellee refers to the following provisions of the lease agreement:
 "1. To have and to hold the same with appurtenances thereon, unto the said Lessee for and during the full term for five (5) years, beginning on the 1st day of July, 1996.
 "2. Yielding and paying therefore, during the term aforesaid rental payable in the following manner:
 "From July 1, 1996 to June 30, 1997 the sum of $1,600.00 per month.
"* * *
 "the same being payable on the first day of each and every month in advance * * *.
 "The parties further agree that the first months' rent will be due on July 1, 1996. However the lease and payment of rents are to become due when an Austintown Township Massage Establishment Permit is received by Chong Hui Sin and/or her assignee.
"* * *
 "5. In the event a Permit is not issued to the Lessee, Chong Hui Sin or assignee within ninety (90) days, then this Lease is hereby cancelled and revoked."
Appellee's interpretation of the lease is that appellant was to apply for the permit after the lease was signed. If the township denied her the permit, the deal would be off and she would not owe appellee any rent. However, if appellant obtained the permit, rent would be due and owing back to July, when appellant first took possession of the premises.
In essence, appellee asks, "Why have the language indicating that the first month's rent will be due on July 1, 1996 if that is not what the parties intended or the rent is not going to commence until three months later?" Appellee concludes again reminding the court that the lease was drafted by counsel for appellant and, accordingly, should be construed against appellant.
Appellant responds to appellee's first cross assignment of error by arguing that the July 1, 1996 date was inserted in the lease so that appellee would not be able to lease the premises to someone else while appellant was making repairs to the premises.
The issue presented by appellee's first cross assignment of error relates to how the lease should have been construed. Case law in Ohio recognizes the contractual nature of a lease. SeeBevy's Dry Cleaners Shirt Laundry, Inc. v. Streble (1965),2 Ohio St.2d 250; Timber Ridge Invest. Ltd. v. Marcus (1995),107 Ohio App.3d 174. Construction of written contracts is a matter of law. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,313. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo."Id., quoting Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108; Ohio Bell Tel. Co. v. Pub.Util. Com. (1992), 64 Ohio St.3d 145, 147.
"The purpose of contract construction is to discover and effectuate the intent of the parties. * * * The intent of the parties is presumed to reside in the language they chose to use in their agreement. * * *" (Internal citations omitted.)Id. "If the meaning is apparent, the terms of the agreement are to be applied, not interpreted." Marcus, supra, at 179. "Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning. * * * Finally, a contract is to be construed against the party who drew it. * * *." Graham,supra, at 313-314.
The language of the lease agreement that is at the center of this dispute is unambiguous. Item 2 of the lease clearly states that rent from July 1, 1996 to June 30, 1997 is $1,600.00 per month. Also under item 2, the lease goes on to state that:
 "[t]he parties further agree that the first months' rent will be due on July 1, 1996. However the lease and payment of rents are to become due
when an Austintown Township Massage Establishment Permit is received by Chong Hui Sin and/or her assignee." (Emphasis added.)
The plain language of the lease agreement is clear. Rent was to accrue beginning July 1, 1996 and become due if and when appellant received her license.
Accordingly, appellee's first cross assignment of error has merit.
In her second cross assignment of error, appellant alleges that:
 "THE TRIAL COURT ERRED BY FAILING TO ISSUE A WRIT OF RESTITUTION WHERE IT FOUND THE DEFENDANT-APPELLANTS HAD FAILED TO PAY THEIR RENT."
Appellee asserts that appellant was far behind in her rent by the time of the March 24, 1997 hearing, having paid only $4,800. Preceding on the assumption that rent was to begin on July 1996, appellee argues that nine months of rent was due at the March hearing with only three months having been paid.
The trial court interpreted the lease in such a way that rent was due beginning in October. Appellee argues that even under this interpretation of the lease that three months rent was due and owing at the time of the March 24, 1997 hearing.
The trial court held that appellant could not apply the costs of repairs made against rent. Appellee argues that despite this holding the trial court failed to issue a writ of eviction as mandated by Chapter 1923 of the Revised Code, the chapter governing forcible entry and detainer. Appellee cites to R.C.1923.09 which states, in pertinent part, as follows:
 "After hearing the evidence, * * * [i]f he finds the complaint to be true, he shall render a general judgment against the defendant, in favor of the plaintiff, for restitution of the premises and costs of suit. If the judge finds the complaint true in part, he shall render a judgment for restitution of such part only, and the cost shall be taxed as he deems just." (Emphasis added.)
In response to appellee's second cross assignment of error, appellant points to the trial court's order requiring appellant to deposit with the court $11,200 during the pendency of this appeal and to pay appellee directly rental payments of $1,800 per month.
Counsel for appellee's argument under this cross assignment of error is incongruous with assertions made in her "STATEMENT OF THE CASE". As was indicated earlier, the trial court held a hearing on appellant's motion for stay of judgment on July 31, 1997. Referring to this hearing, counsel for appellee, in his "STATEMENT OF THE CASE" stated:
 "Essentially, Appellant requested that no eviction issue and no execution upon any judgment be made during the pendency of this appeal. Appellee opposed the motion, in that she had received no rent subsequent to filing the complaint and would not receive any additional rent while the appeal was pending. As a compromise, the parties fashioned an entry, wherein rent was to be escrowed, and later paid, while the appeal was processed. Said entry was signed by the Judge on July 31, 1997. * * *" (Emphasis added.) Appellee's brief, p. 2
The July 31, 1997 judgment entry referred to by appellee states in pertinent part:
 "In the event Defendant fails to deposit the above monies with the Court within 10 days of this order, or in the event Defendant is late in making monthly rent payments to Plaintiff, a writ of eviction shall issue immediately."
It would seem at once illogical and unfair that appellee could now seek to invoke the mandatory language of R.C. 1923.09
after representing to the trial court that a compromise had been reached among the parties pending resolution of this appeal. Additionally, appellee has failed to assert the occurrence of either of the two conditions which would trigger a writ of eviction (i.e., appellant's failure to place the monies in escrow or pay future rent).
Accordingly, appellee's second cross assignment of error is without merit.
The judgment of the trial court is hereby affirmed in part and reversed in part. We reverse the judgment of the trial court only to the extent that it found that rent did not commence until October 1996. We hereby enter judgment for appellee finding that, under the plain language of the terms of the lease, rent commenced July 1996, accrued, and became due in October 1996. The balance of the trial court's judgment is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ------------------------- Gene Donofrio Presiding Judge
[1] During the pendency of this appeal, Grace Kim passed away and was substituted by Raymond Poirier, Administrator of the Estate of Grace Kim.
[2] All subsequent references made to appellant are meant only to refer to appellant Chong Hui Sin. Although Glenn Van Kamp was a named party defendant in the proceedings below the conduct appellee complained of was attributed only to Chong Hui Sin and her counsel. Additionally, the last judgment entry filed by the trial court referred only to appellant Chong Hui Sin.