**KENT STATE UNIVERSITY**

v.

**UNIVERSITY COFFEE HOUSE, INC. d.b.a. Arabica.**

2002-Ohio-4915.]

Court of Claims of Ohio.

No. 2001–08846–PR.

Decided Sept. 10, 2002.

Stephen J. Pruneski and David S. Nichol;  Betty D. Montgomery, Attorney General, and Susan M. Sullivan, Assistant Attorney General, for plaintiff.

W. Andrew Hoffman III and Lance B. Johnson, for defendant.

---

J. WARREN BETTIS, Judge.

{¶ 1}  On May 28, 2002, the court conducted a trial on plaintiff's claims of breach of contract and damages and defendant's counterclaims of breach of contract, specific performance, and request for an accounting.  Plaintiff's claim for forcible entry and detainer was previously denied by this court on December 11, 2001.[1]

{¶ 2}  In March 1994, Kent State University ("KSU") solicited bids from a variety of food and beverage vendors to operate a new "food court" on the first floor of the Student Center in an area known as The Hub. KSU desired to build a food court to attract more people to the university and to have its commuter students use the Student Center more often.  Prior to 1994, The Hub consisted of a Wendy's restaurant.  A candy counter was located in a hallway on the first floor near The Hub;  a cafeteria was located on the second floor;  and a formal dining room, known as the Schwebel Room, was located on the third floor.  On one side of the basement of the Student Center, the Rathskeller sold pizza and beer;  a game room with approximately 20 pool tables occupied the other side. Before the food court was constructed, coffee was sold at the candy counter, the cafeteria, and the Schwebel Room.

---

1.  On December 18, 2001, KSU filed a request for findings of fact and conclusions of law regarding this court's ruling on the forcible entry and detainer claim.  On January 23, 2002, that motion was denied because the rationale for the ruling will be addressed in this decision.

{¶ 3}   In 1994, University Coffee House, Inc. ("UCH"), was formed and incorporated.   UCH obtained a franchise known as Arabica in order to become one of the founding operators in the food court.   Arabica was a specialty or gourmet coffee and pastry shop that featured espresso, cappuccino, and many flavored coffees and desserts.   Food court plans called for a maximum of eight fast food providers, each with a different main menu theme or product line.

{¶ 4}   The request for proposals ("RFP") in KSU's invitation to bid solicited the following:

{¶ 5}   "Proposals for the installation and operation of Fast Food Court Shops, by established national firms or organizations with extensive experience in a fast food restaurant operation, in the Kent Student Center, Kent State University, Kent, Ohio, possibly including but not limited to Shops for hamburgers, pizza, Mexican/tacos, chicken, sub sandwiches/deli, oriental (Chinese) food, ice cream/yogurt/donuts, pretzels, and coffee/pastry."

{¶ 6}   The Specifications section stated the following:

{¶ 7}   "I. *MISSION OF CONTRACT:*  Proposals are to be submitted for the installation and operation of Fast Food Court Shops by established national firms or organizations with extensive experience in a fast food restaurant operation. *The resulting Court should offer one Shop for each of a number of product lines.*

{¶ 8}   "II. *AREA:*  The west wall and partial north wall of the first floor Hub located in the Kent Student Center.   * * * The final number of Shops, Shop locations, types of Shops and sizes of Shops will be the sole determination of the University.

{¶ 9}   "* * *

{¶ 10}   "IV. THE SELECTED CONTRACTOR MUST AGREE TO:

{¶ 11}   "* * *

{¶ 12}   "O. Provide the University with a proposed menu and a statement indicating the kinds of services to be provided, current portion sizes and prices for its operation and agree to post menu prices in a conspicuous place.   Prices and menu items are to be the same as those offered and charged in similar operations at other locations.   Once menus, prices and portion sizes have been established, any changes must be submitted to the Executive Director, Auxiliary Operations or designee before implementation. *Competition between like products among Shops will be strongly discouraged.*

{¶ 13}   "* * *

{¶ 14}   "CC. Engage in no 'coupon wars' with the other Shops.   * * *

{¶ 15}   "VI. THE UNIVERSITY RESERVES THE RIGHT TO:

{¶ 16}   "\* \* \*

{¶ 17}   "B. *Contract for additional food operations whose main menu theme differs from that of existing Food Court Shops.*"   (Emphasis added.)

{¶ 18}   At a meeting held on April 18, 1994, Ronald Perkins, Assistant Director of Dining Services, stated that the Rathskeller would continue the use for which it had previously been open.   On August 31, 1994, KSU accepted UCH's proposal, and the parties entered into a 10–year lease for one of the eight units at the Food Court.   The RFP and additional documents were made a part of the contract.   The eight stores that were chosen to be Food Court vendors were (1) McDonald's, (2) Mama Ilardo's Pizza, (3) Taco Bell (later replaced by Aunt Chilada's), (4) Subway, (5) Mark Pi's, (6) Friendly's, (7) Hot Sam's Pretzels, and (8) Arabica Coffee.

{¶ 19}   Arabica opened in September 1994;   however, its sales were significantly lower than had been estimated.   In 1995, Jason Fordu, president of UCH, contacted Perkins regarding concerns that another vendor, Hot Sam's, had begun to sell flavored coffee.   In May 1995, KSU agreed to lower UCH's annual base rent from $66,000 to $30,250 to compensate UCH for sales volume lost to Hot Sam's. On August 29, 1996, the parties entered into an agreement whereby KSU allowed UCH to open a coffee cart in Bowman Hall. All of the sales from the coffee cart were applied to UCH's outstanding construction and operations debt. In addition, the parties agreed to a payment plan regarding the outstanding debt.

{¶ 20}   By 1997, three stores had failed or moved out of the food court.   On April 24, 2000, KSU issued an RFP for "the installation and operation of additional Fast Food Court Shops, C–Store, and Gourmet Coffee–Dessert Shop and Co-operators of a unique Food/Bar Unit by established national/local firms \* \* \* for the Kent Student Center."   The April 24, 2000, RFP specifically excluded bids for shops selling hamburgers, pizza, sub sandwiches, oriental food, and bagels.   All of the existing food court vendors, including Arabica, were given a copy of the April 24, 2000 RFP in the spring of 2000.

{¶ 21}   KSU eventually entered into a management contract with Wood Dining Services ("Wood"), a company that specialized in food services at institutions such as universities.   Under Wood's management, KSU replaced Friendly's and Aunt Chilada's food court shops with "Salsa Rico" (a Mexican fast food shop) and "Frossen Flo" (a yogurt/pretzel shop).   KSU converted the C–Store, previously the candy counter, into a convenience store known as the Kent Market. The game room was converted into "Pete's Arena," an establishment that sold pizza and beer, even though the RFP had excluded shops that sold pizza.   In January 2001, the Rathskeller was replaced by "Jazzman's Cyber Café," which featured a lounge with a fireplace, 12 recreational computers, and a large-screen television.   Jazzman's was Wood's branded concept for a coffeehouse selling

specialty coffees such as espresso and cappuccino. Jazzman's advertised itself as "Seattle's Best." Two weeks prior to the opening of Jazzman's, the Kent Market began featuring six selections of Jazzman's coffee outside the food court area on the first floor. In addition, when Jazzman's opened, free coffee was offered to professors.

{¶ 22} Freshmen and sophomores were required to purchase a board plan. Students on the board plan could make purchases using board cards, comparable to debit cards, that deducted payment from a prepaid board plan. KSU charged food court vendors a fee to accept board cards. Board cards were not accepted at the food court until 5 p.m. However, students could use the board cards at the Kent Market and Jazzman's at any time. Seventy-five to 80 percent of Arabica's sales were in the morning. UCH claims that KSU used the board plan to gain a competitive advantage over Arabica.

{¶ 23} From February to April 2001, UCH's attorney met with KSU a number of times to discuss UCH's claim that KSU was violating Arabica's exclusive right to sell specialty coffees. Specifically, UCH alleged that KSU violated the agreement by allowing Jazzman's to operate in the Student Center, allowing McDonald's to sell cappuccino and espresso, and allowing Kent Market to sell Jazzman's flavored coffees. UCH's attorney suggested that KSU reduce the rent because of the increased competition. No agreement was reached. UCH's last rent payment was made on May 30, 2001.

{¶ 24} KSU asserts that UCH breached the lease because it has failed to pay rent since May 2001. UCH contends that on April 24, 2001, it gave KSU notice that KSU was in breach of the lease by allowing other vendors in the food court and Student Center to sell specialty coffees and that KSU's breach released UCH from its obligation to pay rent.

## FORCIBLE ENTRY AND DETAINER

{¶ 25} On July 27, 2001, KSU served Arabica with a three-day notice. KSU then filed its complaint for forcible entry and detainer in the Portage County Municipal Court on August 3, 2001.

{¶ 26} James R. Watson, associate university counsel for KSU, testified that he was familiar with the drafting and negotiation of Arabica's lease. The lease required that both UCH and Arabica Cafes, Inc., its licensor, be given notice of any default and a time period of 15 days to cure the default. Watson admitted that no notice of default was given to either Arabica or UCH. By entry dated December 11, 2001, this court denied KSU's action for forcible entry and detainer

due to the failure of the required notice.[2]

## BREACH OF CONTRACT

■ {¶ 27} KSU asserts that UCH breached the contract by failing to pay rent after May 30, 2001. UCH claims that it had the exclusive right to sell specialty/gourmet coffee in the KSU Student Center, and that KSU breached the contract by operating its own coffeehouse (Jazzman's) in direct competition with Arabica.

{¶ 28} The dispositive issue in this case is whether the contract between the parties granted UCH the exclusive right to sell specialty coffee in the Student Center.

■ {¶ 29} "The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate." *Loblaw, Inc. v. Warren Plaza, Inc.* (1955), 163 Ohio St. 581, 57 O.O. 10, 127 N.E.2d 754, paragraph two of the syllabus. "Words merely descriptive of the purpose for which premises are leased, when unaccompanied by express words of limitation or restriction to that purpose, will not be construed, at the instance of the lessors, as proscribing the use of the premises for purposes similar or related to the described purposes." *Bevy's Dry Cleaners & Shirt Laundry, Inc. v. Streble* (1965), 2 Ohio St.2d 250, 31 O.O.2d 507, 208 N.E.2d 528, paragraph one of the syllabus. See, also, *Meijer of Ohio, Inc. v. Great Scot, Inc.* (Oct. 28, 1983), Hancock App. No. 5–82–37, 1983 WL 4517; *Rite Aid of Ohio, Inc. v. Marc's Variety Store, Inc.* (1994), 93 Ohio App.3d 407, 638 N.E.2d 1056.

■ {¶ 30} "The construction of written contracts and instruments of conveyance is a matter of law." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they choose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.

---

2. Subsequent to the trial on forcible entry and detainer, KSU filed another eviction action against UCH in the Portage County Municipal Court. That court granted KSU's forcible entry and detainer claim on May 24, 2002.

{¶ 31} The court finds that there is no express language in the contract granting UCH the exclusive right to sell specialty coffee throughout the Student Center. The contract specifically states that the area for rent is one of eight shops located in The Hub on the first floor of the Student Center. The greater weight of the evidence establishes that UCH had a right to be the only specialty coffee vendor in the food court of The Hub, but not the entire Student Center. The plain language of the contract states: "Competition between like products among Shops will be strongly discouraged." The court finds that the word "Shops" refers to the shops located in the food court. Language prohibiting KSU from leasing space in other areas of the student center for vendors of gourmet coffee is absent from the lease.

{¶ 32} The court finds that if UCH had wanted the exclusive right to sell specialty coffee throughout the Student Center, it would and should have reserved that right in the express language of the contract. The Kent Market and the basement of the Student Center are not part of The Hub. In conclusion, the court finds that UCH has failed to prove by a preponderance of the evidence that the contract granted it the exclusive right to sell specialty coffee throughout the Student Center. Accordingly, UCH's counterclaims for breach of contract, specific performance, and an accounting must be denied.

{¶ 33} Jacqueline Parsons, executive director of dining at the Student Center, testified that UCH owed $42,189.33 in past-due rent and common-area charges. UCH made its last payment to KSU on May 30, 2001. Parsons also testified that credits in the amount of approximately $5,000 to Arabica should be subtracted from the total amount due. Therefore, the court finds that KSU has proven by a preponderance of the evidence that UCH breached the lease by failing to pay rent after May 30, 2001, and that KSU is entitled to damages in the amount of $37,189.33. Judgment shall be rendered in favor of KSU.

Judgment accordingly.

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.