OPINION
{¶ 1} Plaintiffs-appellants, Katrina and Jesse Stauffer, appeal the decision of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, TGM Camelot Inc., in a landlord-tenant dispute over the return of a "pet fee."
 {¶ 2} On February 27, 2002, appellants entered into a one-year residential lease agreement with appellee for an apartment located at a complex known as Camelot East. Along with the lease agreement, appellants executed a document titled "Pet Agreement," and paid appellee a "nonrefundable" pet fee of $150. Appellants also paid a security deposit of $100.
 {¶ 3} During the course of their tenancy, appellants became dissatisfied with the conditions of their apartment. Their dissatisfaction culminated in a decision to terminate the lease early. Upon termination, appellee returned the $100 security deposit to appellants, without deduction, but refused to refund the $150 pet fee.
 {¶ 4} On May 13, 2003, appellants filed a complaint in which they alleged, among other things, that the pet fee was a security deposit unlawfully withheld in violation of R.C. 5321.16(B). Following discovery, both parties moved for summary judgment.
 {¶ 5} The trial court found, as a matter of contract interpretation, that the pet fee was not a security deposit, but a one-time, nonrefundable fee given as consideration for the right to keep a pet in the apartment. Accordingly, on May 4, 2005, the trial court granted summary judgment in favor of appellee.
 {¶ 6} This appeal followed, in which appellants raise the following single assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND IN DENYING PLAINTIFFS/APPELLANTS' MOTION."
 {¶ 8} Summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to a conclusion adverse to the nonmoving party.Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369,1998-Ohio-389. Appellate review of summary judgment is de novo. See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336.
 {¶ 9} The material facts of this case are not in dispute. Appellants contend that the trial court erred by failing to find, as a matter of law, that the $150 nonrefundable pet fee was actually a security deposit subject to the requirements of Revised Code Chapter 5321, the Landlord-Tenant Act.
 {¶ 10} R.C. 5321.01 defines a security deposit as "any deposit of money or property to secure performance by the tenant under a rental agreement." Pursuant to R.C. 5321.16(B), any deductions from a security deposit must be itemized and identified by the landlord in a written notice and delivered to the tenant together with the remaining deposit, if any, within 30 days of the termination of the tenancy.
 {¶ 11} Appellants argue that although the $150 pet fee was denominated "nonrefundable" in the pet agreement, such a fee is inconsistent with, and prohibited by, the Landlord-Tenant Act. According to appellants, the fee was intended as security to cover damage their pet might cause to the apartment during their tenancy. As a security deposit, appellants contend, appellee was required to comply with R.C. 5321.16(B) and either provide them with an itemized list of deductions for damage caused by their pet, or refund the entire $150. For the reasons that follow, we disagree.
 {¶ 12} To begin, a lease is a contract. U.S. CorrectionsCorp. v. Ohio Dept. of Indus. Relations, 73 Ohio St.3d 210, 216,1995-Ohio-102. Accordingly, when called upon to construe a lease, courts apply traditional contract principles. Timber RidgeInvests. Ltd. v. Marcus (1995), 107 Ohio App.3d 174, 178.
 {¶ 13} The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in their agreement. Graham v. Drydock Coal Co.,76 Ohio St.3d 311, 313, 1996-Ohio-393. When agreements are memorialized and their terms are clear and unambiguous, courts must not look beyond the plain language of the agreement to determine intent. See Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214. The agreement must also be interpreted as a whole, with "the intent of each part gathered from a consideration of the whole."Saunders v. Mortensen, 101 Ohio St.3d 86, 89, 2004-Ohio-24, ¶16.
 {¶ 14} The dispute in this case is over the intent of the parties with respect to the $150 pet fee. Accordingly, we first look to the language the parties chose to employ in their agreement. If the terms of the agreement are clear and unambiguous, we need look no further to determine intent.
 {¶ 15} The lease agreement, in relevant part, provides:
 {¶ 16} "3. RENT AND PAYMENT The Resident will pay as rent the sum of Six Thousand Nine Hundred nad (sic) Sixty FiveHundred nd (sic) Eighty Dollars ($ 6,960.00). Payable in equal monthly installments of 580.00 Five Hundred nd (sic) Dollars ($580.00).
 {¶ 17} "5. DEPOSITS Resident shall pay One Hundred
Dollars ($ 100.00) as a security deposit to secure the performance of all terms of this agreement. If the Resident fails to perform the terms of this agreement, Owner may deduct any amounts owed from the security deposit. Resident shall be liable for any monies owed to owner which exceed the security deposit. If within 30 days after the termination of this agreement, if Resident provides Owner in writing a forwarding address, the Owner will prepare a written statement of security deposit disposition in which there will be a written itemization of any deductions from the security deposit (if any) and a refund to the Resident of the balance, if any, of the security deposit.
 {¶ 18} "10. PETS. No pets, except guide dogs for the handicapped, may be brought onto any part of the apartment complex without the Owner's written consent."
 {¶ 19} In relevant part, the pet agreement provides:
 {¶ 20} "3. PET FEE. Resident will pay a one time nonrefundable pet fee of $_______________ in order to have the pet in the apartment.[1]
 {¶ 21} "4. ADDITIONAL MONTHLY RENT. $_________ The total monthly rent as stated in the lease shall be increased by the foregoing amount.
 {¶ 22} "5 NO LIMIT ON LIABILITY. The additional monthly rent and pet fee under this pet agreement is not a limit on residents' liability for property damages, cleaning, deodorization, defleaing, replacements and/or personal injuries set forth below.
 {¶ 23} "10 LIABILITY FOR DAMAGES. Residents shall be liable for the entire amount of all damages caused by such pet. This applies to carpets, doors, walls, drapes, windows, screens, furniture, appliances and any other part of the apartment or the apartment complex, including landscaping. If such items cannot be satisfactorily cleaned or repaired, residents may pay for replacement by owner. Payment for damages, repairs, cleaning, replacements, etc. shall be due immediately upon demand. Residents shall be strictly liable for the entire amount of any injury to the person or property of others, caused by such pet; and resident shall indemnify owner all costs of litigation and attorney's fees resulting from same.
 {¶ 24} "11. MOVE OUT. Upon move-out of residents, the carpet will be professionally shampooed, and deflead for the protection of future residents. Residents shall also be liable for deodorization of the apartment, if such is necessary in the judgement (sic) of the owner. Such shampooing, defleaing, and/or deoderization (sic) will be arranged by the owner and paid for by the resident."
 {¶ 25} Construing the foregoing provisions in the lease and pet agreements as a whole, we find the parties unambiguously intended the following: (1) that appellants were to pay $100 as a security deposit to secure their performance under the lease, (2) that absent prior approval, pets were not permitted at the apartment complex, and (3) that appellants agreed to pay a one-time, nonrefundable $150 pet fee in exchange for the privilege of keeping a pet in their apartment.
 {¶ 26} R.C. 5321.06 provides: "A landlord and a tenant may include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321 of the Revised Code or any other rule of law."
 {¶ 27} We find no provision of law in Chapter 5321, or elsewhere, that prohibits, or is inconsistent with, a landlord and a tenant including a term in their lease agreement that requires the tenant to pay $150 as a one-time, nonrefundable fee in exchange for the right to keep a pet at the leased premises.
 {¶ 28} In sum, the lease agreement in this case plainly provides that appellants paid $100 as a security deposit. The parties do not dispute that the $100 security deposit was refunded to appellants in accordance with R.C. 5321.16(B). The lease also plainly provides that appellants paid $150 to appellee for the privilege of keeping a pet. Such a provision in a lease is not prohibited by Chapter 5321, the Landlord-Tenant Act, or any other law. Thus, appellants' contention that the trial court erred in failing to find, as a matter of law, that the pet fee was a security deposit subject to the requirements of R.C.5321.16(B) is not well-taken.
 {¶ 29} The assignment of error is overruled.
 {¶ 30} Judgment affirmed.
Young and Bressler, JJ., concur.
[1] The spaces for the amount of pet fee and the additional monthly rent are not filled-in on the copy of the Pet agreement contained in the record. Neither party disputes, however, that when the lease was executed, appellants gave a one-time $150 fee to appellee in conjunction with appellants' desire to keep a pet in their apartment.