[Cite as *Berning v. Lutheran Hous. Serv. #9*, 2024-Ohio-1173.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Carol Berning, Executrix of the
 Estate of Mary H. Kohn, et al.

      Appellees

v.

Lutheran Housing Service #9,
et al.,

      Appellees

Court of Appeals No.  L-22-1281

Trial Court No.  CI0201902468


**<u>DECISION AND JUDGMENT</u>**

Decided:  March 28, 2024

* * * * *

Brian P. O'Connor, Charles E. Reynolds,
and Michael S. Spillane, for appellees.

Joseph F. Petros, III and Christopher G. Kuhn
for appellants.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellants, Lutheran Housing Service #9 and Lutheran Home Society, Inc.,

appeal the November 1, 2022, judgment of the Lucas County Court of Common Pleas

granting summary judgment in favor of appellees, Mary Kohn, represented by Carol

Berning as executrix of her estate; Sharon Vaughn; and Harry Wagner, represented by Kathy Schwartz as executrix of his estate. For the following reasons, we reverse the trial court's judgment and grant summary judgment in favor of appellants.

## A. Facts and Procedural Background

{¶ 2} The facts of this case are largely undisputed. Each appellee previously entered into their own separate contract with appellants. While the specific terms of the three agreements differ—for example, the amount paid by each appellee—the terms relevant to this appeal were common among all three agreements. Each contract was for the purchase of a life lease in a residential unit in one of appellants' condominium complexes in Lucas County, Ohio. The basic terms of the agreements were that each appellee paid a certain amount of money for the right to live in the unit for the rest of their lives with no further rent obligations beyond that initial payment. The leases required each appellee to pay a monthly "Maintenance Fee" in exchange for appellants providing certain services at the complex and to cover payment of any real estate taxes apportioned to their individual units. Upon termination of the leases, either by an appellees' death or for other reasons authorized under the leases, that appellee was entitled to a refund of some portion of that initial purchase price when a new tenant purchased a lease in the vacated unit. At some point prior to this litigation, each appellee terminated their lease agreement. Upon termination, the parties disagreed as to whether the purchase price should be construed as a security deposit subject to return to appellees pursuant to R.C. 5321.16. When appellants refused to return the purchase price upon

2.

termination of the lease, each appellee filed a complaint in the Lucas County Court of Common Pleas.

{¶ 3} Appellee Berning, acting as executrix for Mary Kohn, filed her complaint on May 16, 2019. Appellee Vaughn then filed her complaint against appellants on May 23, 2019. Kathy Schwartz, acting as executrix of Harry Wagner's estate, filed her complaint against appellants on July 12, 2019. The complaints were ultimately consolidated pursuant to Civ.R. 42. As to their enumerated claims for relief, each appellee alleged that appellants violated R.C. 5321.16(A) by failing to pay interest on a security deposit made by appellees, violated R.C. 5321.16(C) by failing to return the security deposit within 30 days of termination of the lease, committed deceptive or unconscionable acts in violation of R.C. 1345.02 to 1345.04—Ohio's Consumer Sales Practices Act, unjust enrichment, and that appellants engaged in a civil conspiracy to defraud appellees. Each appellee also sought a declaratory judgment finding that certain terms of the parties' lease agreements were unconscionable.

{¶ 4} The complaints specifically allege that the life lease purchase prices were actually security deposits, as described by R.C. 5321.01(E), which defines a "security deposit" as "any deposit of money or property to secure performance by the tenant under a rental agreement." Appellees alleged that the purchase price was intended to "secure the condition of the property at the conclusion of her tenancy and to secure the monthly fees due and owing [appellants] pursuant to [their] lease." In light of this allegation, appellees claimed that appellants were obligated to return the entire purchase price of

3.

their life leases as a security deposit, pursuant to R.C. 5321.16, within 30 days of termination of the lease. Prior to filing their complaints, each appellee demanded return of the purchase price for their own life lease. Appellants declined the demands.

{¶ 5} On July 19, 2021, appellants filed a motion for summary judgment as to all of appellees' claims. Appellees filed a joint motion for partial summary judgment as to their security deposit-related claims only that same day. Relevant to the security deposit-related claims, appellants argued that the purchase price was the consideration for the life leases only and did not secure appellees' performance of any of their obligations under the agreements. Conversely, in their motion for partial summary judgment, appellees sought an order finding, as a matter of law, that the purchase price constituted a security deposit subject to the terms of R.C. 5321.16. Specifically, appellees argued that because the term of the agreements mandating a refund of a specified percentage of the selling price of a life lease in the unit to a subsequent purchaser could be reduced to reflect any debts owed to appellants, that the purchase price served as a security deposit as defined by R.C. 5321.01(E).

{¶ 6} On May 5, 2022, the trial court denied appellants' motion for summary judgment as to appellees' security deposit-related claims and granted appellees' motion for partial summary judgment. In its order, the trial court determined that the language of the parties' agreements was clear in that it reflected their intent for the purchase price to serve as consideration for the life lease. However, the court held that this language alone was not controlling on the issue before it because R.C. 5321.13(A) prohibits landlords

4.

from contracting away duties prescribed in R.C. Chapter 5321. That is, if the purchase price was in fact a security deposit, the parties' agreements defining it otherwise to permit appellants to avoid returning the deposit as required by R.C. 5321.16 would violate R.C. 5321.13(A).

{¶ 7} The court then noted that the "primary substantive" issue before it was whether the purchase price qualified as a security deposit. Finding that this was a case of first impression, the trial court provided a framework through which it would reach this determination, stating:

> the Court examines whether the property interests/rights Plaintiffs acquired by contracting with Defendants more closely resemble those in a residential lease or those in the purchase of real estate. If the transactions more closely resemble a lease, the Court will find Plaintiff's purchase price deposits constituted security deposits. By contrast, if the transactions more closely resemble the purchase of real estate, the court will uphold the contracts as written.

After performing this analysis, the trial court determined that the agreements did not grant appellees any property rights in the units normally associated with the purchase of real estate—that is, appellees had no equity in the unit itself, they could not borrow against the unit, could not sell or transfer the unit, and they could only obtain renter's insurance for possessions in the unit. For these reasons, the trial court held that the agreements more closely resembled a lease and that the purchase price, therefore, was a security deposit as defined by R.C. 5321.01(E). The trial court then granted appellees' motion for partial summary judgment on their security deposit-related claims, finding that they were entitled to return of the deposit with interest and all statutory penalties pursuant

5.

to R.C. 5321.16. The court also found that its resolution of the security deposit claims rendered appellees' remaining claims moot and granted appellants' summary judgment motion as to those claims. The trial court held that its order was not yet final and appealable, however, because a claim for attorney's fees remained unresolved.

{¶ 8} On June 14, 2022, appellants filed a motion for clarification asking the trial court whether it was obligated to return the entirety of the purchase price as a security deposit under R.C. 5321.16 or only the percentage of that amount specified in each individual agreement. The trial court asked the parties to file briefs regarding the amount owed to appellees as a security deposit. Appellees filed their brief as a second motion for partial summary judgment on July 8, 2022, arguing that appellees were entitled to 100% of the subsequent purchase price identified in the parties' agreements. Appellants filed their brief on July 22, 2022, and included a motion for reconsideration of the trial court's granting of partial summary judgment in appellees' favor. On November 1, 2022, the trial court denied appellants' motion for reconsideration and granted appellees' second motion for partial summary judgment, finding that each appellee was entitled to a return of 100% of the purchase price they paid pursuant to the agreement as that entire amount was a security deposit. The trial court also found that the judgment was now final and appealable because the parties had resolved the remaining attorney's fees claim.[1]

---

[1] At oral argument, the parties conceded that while no stipulation was filed reflecting the resolution of that claim, they represented to the trial court that it had been resolved and that the trial court's judgment resolved all pending claims.

6.

## B. Assignment of Error

**{¶ 9}** Appellants timely appealed the trial court's judgment and assign the following error for our review:

> 1. The trial court erred in denying defendants' motion to dismiss and motion for summary judgment, and in granting plaintiffs' motion for summary judgment, as to plaintiffs' claims for relief under R.C. 5321.16.

## II. Law and Analysis

**{¶ 10}** We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

**{¶ 11}** On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written

7.

stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292–293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.* at 293. We find that the trial court erred in granting summary judgment to appellees on their security-deposit related claims.

{¶ 12} In their brief, appellants argue that the trial court erred in granting summary judgment to appellees because (1) the plain language of the agreement reflects that the purchase price was not intended be held by appellants as a security deposit and (2) the purchase price was not a security deposit because it did not secure appellees' performance of their obligation arising under the lease agreements. Because they are interrelated, we address these arguments together.

{¶ 13} At the outset, we note that the trial court's attempt to establish a framework for resolving the question before it—whether the purchase price was a security deposit—was well-intentioned, but misplaced. To answer that question, the trial court compared the nature of the agreement to both real property purchase agreements and leases, finding that if it more closely resembled a lease agreement that the purchase price would be considered a security deposit and if it more closely resembled a purchase agreement that it would be treated as consideration for the life leases appellees purchased. The trial court's analysis is improper, however, because while it attempts to provide guidance on

8.

how the issue before it could be resolved, its application could only have resulted in the finding that the purchase price was a security deposit.

{¶ 14} None of the parties dispute that their agreements were leases. Additionally, R.C. 5321.16 applies only to lease agreements, not real property purchases. Whether the purchase price constitutes a security deposit, then, cannot be dependent on the nature of the agreement because appellants' obligations under R.C. 5321.16 could only arise under a lease agreement. The supposed binary analysis the trial court performed could never have resulted in a finding that the purchase price was consideration because the underlying lease agreements, by definition, do not resemble purchase agreements. Appellants had no opportunity to show that the agreements more closely resembled a real estate purchase, resulting in the conclusion that the purchase prices were not security deposits, because it was undisputed that the parties entered into lease agreements. For that reason, we find that the trial court's framework for analyzing the issue before it lacks merit in light of its predetermined conclusion.

{¶ 15} Moreover, the trial court was mistaken in finding that the issue before it was an issue of first impression. Several courts have previously addressed disputes over whether monies a tenant paid to a landlord constitutes a security deposit. We find the following cases instructive to our resolution of this appeal.

{¶ 16} First, in *Delker v. Kerr,* 6th Dist. Lucas No. L-96-110, 1996 WL 532319 (Sept. 20, 1996), this court held that a $2,000 deposit made at the time a lease term began was not a security deposit. *Id.* at 5. Although the agreement at issue was a lease

9.

agreement, an addendum to that agreement permitted the tenant to make a $2,000 deposit that could be credited toward the purchase of the rental property at the conclusion of the lease term. *Id.* at 3. The tenant made the deposit and moved into the rental property. *Id.* The landlord evicted the tenant before the lease term expired and the tenant demanded return of the deposit arguing that it constituted a security deposit. *Id.* We found that the terms of the lease agreement reflected the parties' intent that the purpose of the $2,000 deposit was for the subsequent purchase of the leased property and not a deposit to secure the tenant's performance of his obligations arising under the lease agreement. *Id.* at 4.

{¶ 17} Second, in *Stauffer v. TGM Camelot, Inc.,* 12th Dist. Butler No. CA2005-12-508, 2006-Ohio-3623, the 12th District Court of Appeals held that a "pet fee" did not constitute a refundable security deposit pursuant to R.C. 5321.16. *Id.* at ¶ 28. The lease agreement in *Stauffer* provided for both the payment of a $100 security deposit and a $150 pet fee, essentially to purchase the right to have a pet on the premises. *Id.* at ¶ 27. The deposit was returned but the tenant sought recovery of that pet fee claiming it also was a security deposit. *Id.* at ¶ 11. The court held that the fee was not a security deposit because there was no provision in R.C. Chapter 5321 that prohibited a lease term providing for the purchase of certain rights as part of a lease agreement, and because the parties intent that the pet fee was not considered a security deposit subject to the requirements of R.C. 5321.16 was clear from the agreement. *Id.* at ¶ 28.

{¶ 18} Third, in *Kopp v. Associated Estates Realty Corp.,* 10th Dist. Franklin No. 09AP-719, 2010-Ohio-1690, the 10th District Court of Appeals held that the tenant's

10.

payments for the purchase of a bond in lieu of a traditional security deposit, a redecorating fee, and a pet fee were not security deposits subject to return under R.C. 5321.16. *Id.* at ¶ 24. As to the bond payment, the landlord offered the tenant the option to pay a $2,500 security deposit in cash upon execution of the lease or, allowed the tenant to purchase a bond in that amount through an insurer for a $437.50 premium in lieu of the security deposit. *Id.* at ¶ 2. The lease agreement also required the tenant to pay a $75 redecorating fee and a $300 pet fee. *Id.* After terminating the lease, the tenant sued for the return of the bond premium and the additional fees. *Id.* The trial court granted summary judgment in the landlord's favor, finding that the payments were not security deposits as defined by R.C. 5321.01(E). *Id.* at ¶ 4.

{¶ 19} On appeal, the 10th District Court of Appeals affirmed the judgment, finding that because the tenant elected to purchase the bond in lieu of making a security deposit, that the bond premium did not constitute a deposit because no money was held by the landlord. *Id.* at ¶ 13. Further, the court held that the agreement was not prohibited by law and the tenant chose to secure his performance on the lease agreement through the bond option rather than a traditional security deposit. *Id.* As a result, the court held that the bond premium was not a security deposit. *Id.* The court reached the same conclusion as to the redecorating fee, finding that it was a permissible term of the lease agreement and "was not dependent on any action or inaction of [the tenant]." *Id.* at ¶ 20. Lastly, the court, citing *Stauffer,* held that the one-time pet fee was for the purchase of the right to have animals in the rental unit. *Id.* ¶ 23. The term providing for the pet fee did not "set

forth any obligations which [the tenant] agreed to meet with regard to their pets" and was "not dependent on potential damages caused by [the tenant's] pets." *Id.* For those reasons, the court held that the pet fee did not secure the tenant's performance under the agreement to qualify as a security deposit as defined in R.C. 5321.01(E). *Id.*

{¶ 20} In contrast to these cases, in which the tenant's payments did not secure their performance under the lease agreement, the 1st District Court of Appeals reached the opposite conclusion regarding a pet deposit in *Pool v. Insignia Residential Group,* 136 Ohio App.3d 266, 736 N.E.2d 507 (1st Dist.1999). In *Pool,* the tenant sought the return of a pet deposit he paid pursuant to a lease agreement. *Id.* at 268. The trial court granted the landlord's motion for judgment on the pleadings pursuant to Civ.R. 12(B)(C), finding that because the lease described the deposit as "nonrefundable" that the landlord had no obligation to return the deposit under R.C. 5321.16. *Id.* at 269. On appeal, the 1st District reviewed the language of the lease agreement which stated "[a]ny damages incurred to the premises above and beyond such amount [of the deposit] shall be charged to the [tenant]." *Id.* at 268. The court held that because this language expressly held that the deposit was to secure the tenant's obligation to protect the rental unit from damages from the pets, that it operated as a security deposit subject to return to the tenant under R.C. 5321.16 despite the "nonrefundable" language used in the parties' agreement. *Id.* at 272.

{¶ 21} The common thread through each of these cases is that whether a payment of money to the landlord operates as a security deposit depends on whether that payment

12.

was made to secure an interest separate from the tenant's obligations under the lease agreement. That is, the amounts paid in *Delker, Stauffer,* and *Kopp* were not security deposits as they were made to secure the tenants' rights, respectively, to purchase a rental unit, the right to have pets in the premises, or the purchase of an insurance bond in lieu of a traditional security deposit. Conversely, the amount paid in *Pool* was made to secure the tenant's obligation under R.C. 5321.05 to protect the rental property from damage and therefore constituted a security deposit as defined by R.C. 5321.01(E).

{¶ 22} To determine whether the payment at issue was a security deposit, each of the courts deciding the cases above looked to the language of the agreement between the parties to determine whether they intended for the payment to secure the performance of the tenant's obligations under the agreement. *Delker* at 4; *Stauffer* at ¶ 13-24; *Kopp* at ¶ 13-22; *Pool* at 270. We perform the same analysis of the parties' lease agreements here.

{¶ 23} A lease agreement is a contract. *Stauffer* at ¶ 12. To construe the terms of a lease, we apply traditional contract principles. *Id.,* citing *Timber Ridge Investments, Ltd. v. Marcus,* 107 Ohio App.3d 174, 667 N.E.2d 1283 (8th Dist.1995). "The purpose of contract construction is to discover and effectuate the intent of the parties. The intent of the parties is presumed to reside in the language they chose to use in their agreements." *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313-314, 667 N.E.2d 949 (1996). Looking at the terms of the agreements here, we find that the parties did not intend for the purchase prices to be construed as a security deposit and that the purchase prices did not secure the performance of appellees' obligations under the agreement.

13.

**{¶ 24}** We agree with the trial court's conclusion that the lease agreements unambiguously showed that the purchase price was not intended to be a security deposit. The trial court stated "the parties clearly manifested an intent to pay a six-figure purchase price for the right to occupy one of [appellants'] units for life." Our review of the agreements reveals that there are no other terms that reference the payment of the purchase price as securing any of appellees' obligations under the agreement. Instead, as the trial court noted, the sole purpose of the purchase price was to secure each appellees' right to live in one of appellants' rental units. We see no distinction between the unambiguous intent between the parties here and the unambiguous intent of the parties in *Delker* and *Kopp* paying consideration for the right to have their pets living in their rental unit. While the terms here are for the purchase of human occupancy, at a substantially higher amount than in dispute in those cases, the amounts appellees paid for the right to live in appellants' rental units were intended solely to secure that right. Therefore, the purchase prices were not intended to secure appellees' performance of their obligations under the agreements. In other words, without the purchase of these life leases, there would be no agreements at all and appellees would have had no obligations to perform that could have been secured by the purchase price. If the amount paid to establish a tenant's obligations under a lease agreement also served as a security deposit to ensure teneant's performance of those obligations, then all rent payments would be security deposits pursuant to R.C. 5321.01(E). Such a result is simply absurd.

{¶ 25} We note appellees' argument that the purchase price did secure their performance of the payment of the monthly maintenance payments. Specifically, appellees argue that since the agreement permitted appellants to deduct any deficiencies in the monthly maintenance payments from the total refund amount, that the purchase price did secure their performance of that payment obligation. Appellees further argues that the purchase price should be considered a security deposit because this right to retain a portion of the refund arises under R.C. 5321.16(B). That provision permits a landlord to apply any security deposits they hold to satisfy any unpaid rent or damages caused by the tenant upon termination of the lease. Retention of this right, appellees argue, shows that the appellants intended for the purchase price to be a security deposit. We disagree.

{¶ 26} First, that argument is in direct contrast to the unambiguous intent derived from the parties' agreements that the purchase prices were for the right to live in the rental units and not to ensure appellees' payment of the monthly maintenance fees. Second, appellees conflate the monthly maintenance fees with monthly rent for purposes of R.C. 5321.16. R.C. 5321.16(B) expressly limits a landlord's ability to retain any portion of a security deposit to the satisfaction of *unpaid rent or damages* resulting from a tenant's failure to comply with their obligations under R.C. 5321.05 or the rental agreement. The underlying agreements only identify maintenance fees, not rent, as appellees' monthly payment obligations.[2] Further, the 9 specific obligations of a tenant

---

[2] This is logical as appellees' "rent" for the right to reside in the rental units was paid for by the life lease purchase price.

15.

identified in R.C. 5321.05(A)(1-9) make no reference to the payment of monthly maintenance fees as an obligation to be protected by a security deposit. Put simply, the lease term permitting appellants to retain a portion of appellees' refund was not related to their failure to pay rent or to compensate appellants for damage resulting from their failure to abide by R.C. 5321.05. Therefore, appellees' argument that appellants' ability to retain a portion of the refund arose under R.C. 5321.16, rendering the purchase price a security deposit, is without merit.

{¶ 27} In sum, the lease agreements appellees and appellants executed provided for appellees' purchase of a life lease in one of appellants' rental units in exchange for a lump sum payment. The agreements unambiguously reveal the parties' intent that the purchase prices secured nothing more than appellees' right to reside in the individual units. For the purchase price to be construed as a security deposit, it must have been made to secure appellees' performance under the lease agreements. R.C. 5321.01(E). Appellees did not identify any term of their agreements that showed the parties intended the purchase price to secure their performance under the agreements. As a result, the trial court erred in finding that the purchase prices were security deposits and granting partial summary judgment in appellees' favor on those claims. For these same reasons, the trial court erred in denying appellants' motion for summary judgment on those claims. Therefore, we find appellants' single assignment of error well-taken.

16.

### III.  Conclusion

{¶ 28} We find appellant's assignment of error well-taken. The trial court erred in finding that appellees' purchase price was a security deposit subject to refund under R.C. 5321.16 and erred in granting judgment in their favor.  Further, the trial court erred in denying appellants' motion for summary judgment for these same reasons.  Therefore, we reverse the November 1, 2022 judgment of the Lucas County Court of Common Pleas and grant summary judgment in appellants' favor as to appellees' claims arising under R.C 5321.16(A) and (C).

{¶ 29} Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____
                                                                        JUDGE
Gene A. Zmuda, J.

                                                             _____
Charles E. Sulek, P.J.                                   JUDGE
CONCUR.

                                                             _____
                                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

17.